UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RODGER NESTO,

                Petitioner,                Case No. 2:21-cv-225

v.                                     Honorable Jane M. Beckering

CONNIE HORTON,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Rodger Nesto is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a bench trial in the Kalkaska County Circuit Court, Petitioner was convicted of first-degree and second-degree child abuse, in violation of Mich. Comp. Laws § 750.136b. On June 30, 2017, the court sentenced Petitioner as a fourth habitual offender to a prison term of 30 to 60 years for first-degree child abuse to be served concurrently with a sentence of 14 years, 4 months to 60 years for second-degree child abuse.

On November 1, 2021, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

    I.      Petitioner was deprived of his right under the Sixth Amendment to the United States Constitution to effective assistance of counsel when his trial counsel['s] performance fell below an objective standard of reasonableness which prejudiced the Petitioner as to deprive him of a fair trial.

    II.     Petitioner has a guaranteed constitutional right under the Sixth Amendment of the United States Constitution to effective assistance of counsel. Petitioner was deprived of his constitutional right when his trial counsel

failed to properly communicate a favo[]rable plea offer and the risk associated with rejecting a plea, . . . which would have allowed Petitioner to make a[n] informed and competent decision.

III.    Petitioner was deprived of his right to due process and equal protection [and] also a fair trial under the 14th and 6th Amendments to the United States Constitution when the trial court grossly abused its discretion denying Petitioner['s] motion for funds for an expert at his *Ginther* hearing.[1]

IV.    Petitioner has a guaranteed constitutional right under the 14th Amendment of the United States Constitution to due process and equal protection under the laws. Petitioner was deprived of his right to due process and equal protection of the law when the trial court improperly scored offense variables 3 and 10.

(Pet., ECF No. 1, PageID.10–16.)[2] Respondent asserts that Petitioner's grounds for relief are

meritless.[3] (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

[2] The order of the habeas grounds set forth herein is taken from the handwritten pages attached to the petition. Petitioner sets forth the same grounds for relief in his petition; however, in the petition, grounds I and II are reversed. That is, ground I from the handwritten pages is presented as ground II in the petition, and ground II from the handwritten pages is presented as ground I in the petition.

[3] Respondent also contends that Petitioner's third ground for relief is unexhausted. (ECF No. 10, PageID.65.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.   Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant's convictions arose out of injuries sustained by EN, his approximately 2-month-old child. On April 23, 2016, EN was in the sole care of defendant when he called EN's mother and advised her that the child was injured. EN's grandmother arrived at the home to find that EN had suffered injuries to her head serious enough to cause bruising. Over defendant's objection, she called 9-1-1 in order to obtain medical assistance for EN. EN was transported to the hospital.
>
> Defendant informed the responding officer that while he was sitting on the couch, he had accidentally dropped EN from 10 to 12 inches off the floor after EN's pacifier had fallen out of her mouth. However, defendant later reported that he had dropped EN while he was standing with her in the kitchen. During a subsequent interview, defendant stated that he had dropped EN and that he "did not hit [his] daughter in any way shape or form." He later acknowledged striking EN "a couple times" and further admitted that a week or two prior, EN had fallen when he was holding her, "and he wasn't sure if that had caused [the skull fracture]." Defendant also admitted that he had "slapped" EN on the chest when she was "throwing her fit," and pat[ted] her on the back "probably too hard" while trying to quiet her down.
>
> At defendant's preliminary hearing, Dr. Brian Lishawa, the pediatrician who observed EN at Munson Hospital, described a pattern of bruising on EN's face and torso, which he believed to be consistent with child abuse. He testified that EN's injuries were not likely caused by an accidental dropping, but rather "would have been caused by a forceful strike to the right side of the child's face with the child's head against a hard surface on the back left." He did not believe that EN's bruising was consistent with defendant's explanation that the child had been recently dropped.
>
> At trial, Dr. Lishawa testified that EN had suffered a "small linier [sic] non-depressed fracture" on her skull that had occurred within hours of her arrival at the hospital. EN had also suffered posterior rib fractures which were "at least a week old," and in Dr. Lishawa's opinion were indicative of child abuse. Given the presence of both bruising and the fracture, Dr. Lishawa concluded that the cause of EN's injuries must have included "an intense amount of force." Ultimately, Dr. Lishawa concluded that EN "had suffered different episodes of physical abuse

during her first two months of life," the most recent of which "[v]ery possibly occurred within the four and a half hours prior to my examination."

Defendant presented no expert testimony. Instead, trial counsel argued that EN's injuries were likely caused by her mother, as her primary caretaker, instead of defendant. The trial court concluded that defendant was guilty of first-degree and second-degree child abuse. The court ultimately found that the "changes in [defendant's] stories and the details are a result of the defendant trying to cover up what actually occurred in this case and trying to explain the extent of her injuries." The court rejected trial counsel's argument that the injuries were caused by someone else and ultimately sentenced defendant to a prison term of 30 to 60 years for first-degree child abuse and 172 months to 60 years for second-degree child abuse.

*People v. Nesto*, No. 339986, 2019 WL 3852786, at *1 (Mich. Ct. App. Aug. 15, 2019).

Petitioner's bench trial was held on May 16, 2017. (Trial Tr., ECF No. 11-7.) Over the course of that day, the trial court heard testimony from the grandmother of the victim, two law enforcement officers, and Dr. Lishawa. (*Id.*) The court recessed for a little over an hour to consider the testimony and exhibits before reaching a guilty verdict that afternoon. (*Id.*, PageID.463–473.) Petitioner appeared before the trial court for sentencing on June 30, 2017. (ECF No. 11-9.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the claims set forth as habeas grounds I, II, and IV above. Petitioner also filed a motion to remand to the trial court for an evidentiary hearing regarding his claims of ineffective assistance of counsel. (ECF No. 11-12, PageID.1737–1746; ECF No. 11-13, PageID.1747–1761.) On March 28, 2018, the court of appeals granted Petitioner's motion for a remand. (ECF No. 11-13, PageID.1764.)

On remand, Petitioner, through counsel, filed a motion requesting a new trial, an extension of the prior plea offer, and/or an evidentiary hearing. He also filed a motion requesting funding to allow an expert witness to review the evidence and testify regarding whether trial counsel was ineffective for failing to consult with an expert. (ECF No. 11-13, PageID.1771–1785, 1821–1839.) The trial court denied Petitioner's request for funding and his motion for the appointment of an

expert for the evidentiary hearing. (*Id.*, PageID.1882–1889.) The trial court held the *Ginther* hearing on October 25, 2018. (Mot. Hr'g Tr., ECF No. 11-10.) At the completion of the hearing, the trial court denied Petitioner's motion for a new trial or reinstatement of the prior plea offer, finding that trial counsel had not provided ineffective assistance to Petitioner. (*Id.*, PageID.631– 644.)

The court of appeals subsequently affirmed Petitioner's convictions and sentences. *Nesto*, 2019 WL 3852786, at *1. Petitioner, through counsel, then filed an application for leave to appeal to the Michigan Supreme Court, raising the same grounds he raises in this habeas action. (ECF No. 11-4, PageID.2162–2202.) The Michigan Supreme Court denied leave to appeal on September 23, 2020. (*Id.*, PageID.2160.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This

5

standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

III.     **Discussion**

    A.     **Ineffective Assistance of Counsel Grounds**

       1.     **Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those

circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In resolving Petitioner's claims of ineffective assistance, the Michigan Court of Appeals stated with respect to the standard of review:

> A defendant has the right to the effective assistance of counsel. U.S. Const., Ams. VI and XIV; Const. 1963, art. 1 § 20; *People v. Vaughn*, 491 Mich. 642, 669, 821 N.W.2d 288 (2012). Generally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) that the resultant proceedings were fundamentally unfair or unreliable. *People v. Lockett*, 295 Mich. App. 165, 187, 814 N.W.2d 295 (2012). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v. Mack*, 265 Mich. App. 122, 129, 695 N.W.2d 342 (2005). A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance was below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Scott*, 275 Mich. App. 521, 526, 739 N.W.2d 702 (2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*Nesto*, 2019 WL 3852786, at *2. Although the appellate court primarily cited state court authority for the standard, the standard applied is identical to *Strickland*. Moreover, if one looks to *Scott* and the cases cited therein, eventually the source of the standard is identified as *Strickland*. *See People v. Effinger*, 536 N.W.2d 809, 811 (Mich. Ct. App. 1995). The Court, therefore, will consider whether the court of appeals reasonably applied the standard for both of Petitioner's claims of ineffective assistance of counsel.

### 2. Ground I—Failure to Present Expert Testimony

As his first ground for relief, Petitioner contends that counsel rendered ineffective assistance by failing to consult with an independent expert "to potentially provide a reasonable defense against the evidence offered by the prosecution's expert witness." (ECF No. 1, PageID.10–

11.) Petitioner contends that the testimony provided by the prosecution's witness could only be disproved by another expert pediatrician. (*Id.*, PageID.11.)

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Moreover, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.*

In rejecting Petitioner's claim, the court of appeals stated:

Defendant asserts that his trial counsel provided ineffective assistance by failing to adequately investigate and present an expert medical witness to refute the testimony of the prosecution's medical expert. We disagree.

Defense counsel has wide discretion as to matters of trial strategy. *People v. Heft*, 299 Mich. App. 69, 83, 829 N.W.2d 266 (2012). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Russell*, 297 Mich. App. 707, 716, 825 N.W.2d 623 (2012). "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v. Dixon*, 263 Mich. App. 393, 398, 688 N.W.2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Chapa*, 283 Mich. App. 360, 371, 770 N.W.2d 68 (2009) (citation and quotation marks omitted). A reviewing court will defer to counsel's strategic judgments, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. [*People v.*] *Trakhtenberg*, 493 Mich. [38,] 51[–]55 [(2012)].

A failure to conduct a reasonable investigation can amount to ineffective assistance. *Id.* at 5255. Defense counsel cannot, in some cases, make a legitimate choice about whether and to what extent he or she should rely on expert evidence without first obtaining familiarity with the medical issues and consulting with experts. See *People v. Ackley*, 497 Mich. 381, 389394, 870 N.W.2d 858 (2015). Further, when

there is no direct evidence, expert testimony becomes essential. *Id.* at 384, 870 N.W.2d 858. "Courts must determine whether the strategic choices [were] made after less than complete investigation, or if a reasonable decision [made] particular investigations unnecessary." *Id.* at 389, 870 N.W.2d 858 (quotation marks and citation omitted; alterations in original).

Defendant posits that the circumstances of his case are nearly identical to those at issue in *Ackley.* In *Ackley*, the prosecutor intended to rely on several experts who would testify that injuries suffered by a child were most likely the result of intentional physical abuse. The defendant's appointed counsel contacted a single expert for assistance who informed counsel that he would not be able to testify in support of defendant's case. *Id.* at 385, 870 N.W.2d 858. However, the expert "explained to counsel that there was a marked difference of opinion within the medical community about diagnosing injuries that result from falling short distances, on the one hand, and shaken baby syndrome (SBS) or, as it is sometimes termed, abusive head trauma (AHT), on the other hand." *Id.* Counsel apparently never sought out another expert, despite being given the name of another expert who could assist him. *Id.* at 385–386. Nor did counsel read medical treatises or other articles on the topic. *Id.* at 386, 870 N.W.2d 858. Our Supreme Court concluded that the defendant's counsel provided ineffective assistance by completely failing to seek the assistance of an expert who could support the defendant's theory and counter the prosecution's expert, and by failing to develop a trial strategy based on familiarity with the readily available journal articles to educate himself on the medical issues at the core of the case. *Id.* at 389[–]394.

In this case, trial counsel was aware of the prosecution's theory of the case—that EN suffered from non-accidental injuries while in defendant's care—and was aware of Dr. Lishawa's position based on his testimony at the preliminary examination. Trial counsel was also aware of defendant's prior statements, including an admission that he dropped EN on her face. Nonetheless, trial counsel did not consult with any experts in the fields of SBS or AHT. However, this was not a case where the prosecution was arguing that EN's injuries were the result of SBS or AHT. Rather, in this case, Dr. Lishawa's testimony suggested that EN had experienced multiple incidents of blunt force trauma throughout her short lifespan. These facts distinguish defendant's case from *Ackley*.

Further, trial counsel indicated that he chose not to consult with experts because his theory of the case was focused on developing the argument that defendant did not intentionally injure EN, but her mother did. Trial counsel believed that his defense theory would exonerate defendant because EN was not in the exclusive care of defendant during the times when the injuries occurred, EN's mother was EN's primary caregiver and had repeatedly sought medical attention for EN, she had shown frustration over EN's colic, and may have caused the injuries in her hurry to leave home that morning to get her methadone "fix." Once trial counsel settled on this theory, there was no need for an expert witness to address whether the injuries were accidental in nature.

The prosecution argues that even if defendant had obtained an expert, a favorable outcome for defendant was not guaranteed. The prosecution also suggests that trial counsel's strategy of blaming the mother was reasonably calculated and did not necessitate a medical expert. Indeed, this Court has acknowledged that the fact a strategy did not succeed does not necessarily amount to ineffective assistance of counsel. *People v. Petri*, 279 Mich. App. 407, 412, 760 N.W.2d 882 (2008).

On remand, defendant motioned the trial court for the approval of funds to retain an expert. The motion was supported by an affidavit outlining the potential testimony of Dr. John G. Galaznik, who while acknowledging that he had not yet conducted a thorough review of EN's medical records, disagreed with the accuracy of Dr. Lishawa's testimony as to whether EN's injuries could be caused by an accidental fall. However, because the trial court declined to provide funds for Dr. Galaznik's services as an expert witness, the record is devoid of any conclusions Dr. Galaznik may have reached had he been retained and fully reviewed the file.

Undoubtedly, had the trial court concluded that EN's injuries were accidental, defendant could not have been convicted of either first-degree or second-degree child abuse, which respectively require a showing that the injuries were caused either intentionally or recklessly. MCL 750.136b(2); MCL 750.136b(3). However, defendant has not established that this conclusion was reasonably probable, and thus, failed to establish that any error prejudiced him. Given defendant's multiple admissions to law enforcement that he had struck EN on several occasions, including admissions that he slapped and struck her "too hard," and that this may have caused her fractured skull and fractured ribs, the trial court had substantial nonmedical evidence to support defendant's conviction. Accordingly, defendant cannot establish that, but for counsel's errors, the result of the proceeding would have been different. *Scott,* 275 Mich. App. 526.

*Nesto*, 2019 WL 3852786, at *4–5.

During the *Ginther* hearing, trial counsel testified that he did not talk to any medical experts regarding Petitioner's daughter's injuries. (Mot. Hr'g Tr., ECF No. 11-10, PageID.518.) Counsel testified that he did not do so because he developed a theory that "made the most sense." (*Id.*) Counsel testified that Petitioner had "very little contact with the child" and that the child's mother had "significant contact with the child." (*Id.*) Counsel noted that the child's mother "was experiencing a lot of problems taking the child to emergency rooms, postnatal care; expressing all this frustration with the child." (*Id.*)

Counsel testified that he did not explore the possibility that the injuries were caused by a fall because he was "very confident that [the] medical testimony would exonerate [Petitioner] at trial." (*Id.*, PageID.522.) Counsel believed that Dr. Lishawa's testimony during the preliminary hearing that the injuries could have occurred "before the time frame" when Petitioner was watching his daughter was beneficial to Petitioner. (*Id.*, PageID.523.) He thought that testimony was "more consistent with the fact that [the mother] caused the injury." (*Id.*, PageID.524.)

On cross-examination, counsel explained how he developed the theory of blaming the mother for the child's injuries. Counsel stated that there were medical records admitted to show that the mother "was having problems[;] that this was not an easy child for her to take care of." (*Id.*, PageID.537.) He noted that the most significant bruising was to the flank and hip area, and that the older bruising was "consistent with the period of time that [Petitioner] [would not] have had exclusive control or care" over his daughter. (*Id.*, PageID.537–538.)

On redirect, counsel acknowledged that the "accidental injury" theory would have "been a good alternative theory of the case." (*Id.*, PageID.544.) He noted, however, that it was "just not the one that [he] chose and [it was] not the one [Petitioner] chose." (*Id.*) Counsel acknowledged that Petitioner was not comfortable with throwing the child's mother "under the bus," but that his obligation was to Petitioner, not the mother. (*Id.*, PageID.544–545.)

The court of appeals identified a sound trial strategy here. As noted by the Sixth Circuit, "the Supreme Court has held that '[i]n many instances *cross-examination will be sufficient* to expose defects in an expert's presentation.'" *Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Harrington*, 562 U.S. at 111). Counsel's strategy was to demonstrate that the injuries to Petitioner's daughter were caused by her mother, not Petitioner. Given this focus,

counsel's decision to not present a counter-expert and, instead, focus on cross-examination was a reasonable trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005).

To prevail, Petitioner must show that counsel's strategy deprived him of a substantial defense. The record does not support that claim. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable. The court of appeals concluded that "the fact a strategy did not succeed does not necessarily amount to ineffective assistance of counsel." *Nesto*, 2019 WL 3852786, at *5. This Court agrees. While Petitioner suggests that a counter-expert would have testified that the injuries to his daughter were caused by an accidental fall, Petitioner has failed to demonstrate that a conclusion that the injuries were accidental was more likely than not. Moreover, even if an expert had testified that the injuries were likely caused by an accident, neither Dr. Lishawa's testimony for the prosecution nor Petitioner's admissions to police would have been entirely negated. In sum, Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to present a counter-expert is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground I.

### 3.    Ground II—Ineffective Assistance Regarding Plea Offer

In habeas ground II, Petitioner contends that counsel rendered ineffective assistance during the plea-bargaining process. (ECF No. 1, PageID.12.) Petitioner argues that he was "offered a favorable plea [that] was substantially lower than the sentence he rec[ei]ved as a result of trial." (*Id.*) He argues that trial counsel insisted on going to trial, threatening that Petitioner "would lose counsel as a paid attorney" if he did not do so. (*Id.*) According to Petitioner, counsel told him that the case against him was "very weak although there was substantial evidence against Petitioner." (*Id.*) Overall, Petitioner contends that counsel failed to advise him of the risks associated with rejecting a favorable plea offer and instead going to trial. (*Id.*, PageID.15.)

14

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

In rejecting Petitioner's claim, the court of appeals stated:

> "A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer." *People v. Douglas*, 296 Mich. App. 186, 205, 817 N.W.2d 640 (2012), rev'd in part on other grounds 496 Mich. 557, 852 N.W.2d 587 (2014). Counsel's assistance must be sufficient to enable the defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v. Corteway*, 212 Mich. App. 442, 446, 538 N.W.2d 60 (1995). A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance was below an objective standard of reasonableness and that the poor performance prejudiced the defendant. *Douglas*, 496 Mich. at 592, 852 N.W.2d 587. To establish that he has been prejudiced, defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that he would have accepted the plea, that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, would have been more favorable than what was ultimately imposed. *Id.*

15

*Nesto*, 2019 WL 3852786, at \*3. Once again, the standard applied by the court of appeals was entirely consistent with clearly established federal law.

Applying that standard, the court of appeals determined:

> Throughout the case, and even after his conviction, defendant maintained his innocence and never acknowledged to trial counsel that he abused EN.
>
> * * *
>
> [E]ven if this Court found that trial counsel's performance was below an objective standard of reasonableness, defendant is unable to establish that he was prejudiced. More specifically, while defendant claimed at the *Ginther* hearing that he was prepared to take the plea offer, he also acknowledged that he had received a prior offer of "15 to 30 years" and declined it because he did not believe it was an appropriate offer "for an accident." Defendant maintained his position that he did not abuse EN, and what occurred was "an accident." He further denied placing EN into a situation without due care or due regard for her life and safety. Indeed, throughout the hearing, he never admitted that he was reckless or careless with EN. Instead, he simply did not foreclose the possibility that he was reckless. Ultimately, the trial court concluded that defendant's testimony did not provide a factual basis to justify a plea to either first-degree or second-degree child abuse under even the "most generous view of what could be recklessness." Given these facts, defendant has not established a reasonable probability that he would have accepted the plea, that the plea offer would have been presented to the court, and that the court would have accepted its terms. *Douglas*, 496 Mich. at 592, 852 N.W.2d 587.

*Nesto*, 2019 WL 3852786, at \*4. The facts as found by the appellate court—including Petitioner's insistence on his innocence and his rejection as inappropriate of an offer with a sentence of 15 to 30 years—are presumed to be correct, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner offers only his bald statement that he would have accepted the plea offer. That statement is simply not convincing, particularly in light of the other factual findings which Petitioner does not contest.

Accepting as true the facts found by the court of appeals, the court's further determination that Petitioner would not have accepted the plea offer is plainly reasonable and forecloses a determination that Petitioner was prejudiced in any way by counsel's handling of the plea offer. In

short, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to adequately advise him during the plea offer process is contrary to, or an unreasonable application of, *Strickland*, *Hill*, or *Lafler*. Petitioner, therefore, is not entitled to relief on habeas ground II.

> **B.      Ground III—Denial of Funds for an Expert**

In habeas ground III, Petitioner contends that the trial court violated his due process and equal protection rights by abusing its discretion and denying Petitioner's request for funds to retain an expert to testify at his *Ginther* hearing. (ECF No. 1, PageID.14.)

As an initial matter, any error by the state courts in applying their own rules in denying Petitioner's motion for funds for an expert during the *Ginther* hearing is an issue of state law that is not cognizable in federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). In addition, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986);*Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), but a due process claim with respect to post-conviction proceedings, even if resolved in Petitioner's favor, would not impact Petitioner's custody. In reviewing such a claim, the Court "would not be reviewing any matter directly pertaining to" that custody. *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). If this Court were to conclude that the trial court erred in denying Petitioner funds to retain an expert to testify at the *Ginther* hearing, Petitioner would not automatically be released from custody or be granted a new trial. Rather, the likely remedy would be that Petitioner would receive a new *Ginther* hearing. For that reason alone, Petitioner's third habeas ground is not cognizable.

In any event, Petitioner has not demonstrated that the state courts' decision to deny funds for an expert was contrary to, or an unreasonable application of, clearly established federal law. In its opinion denying Petitioner's request, the trial court concluded that an expert was not needed at the *Ginther* hearing because Petitioner had "failed to show that an expert's testimony . . . would make enough of a difference in the outcome to justify the appointment of an expert at public expense for that purpose." (ECF No. 11-13, PageID.1888.) The court of appeals did not directly address whether the trial court had abused its discretion in denying Petitioner's request for an expert. Instead, the court of appeals stated:

> On remand, defendant motioned the trial court for the approval of funds to retain an expert. The motion was supported by an affidavit outlining the potential testimony of Dr. John G. Galaznik, who while acknowledging that he had not yet conducted a thorough review of EN's medical records, disagreed with the accuracy of Dr. Lishawa's testimony as to whether EN's injuries could be caused by an accidental fall. However, because the trial court declined to provide funds for Dr. Galaznik's services as an expert witness, the record is devoid of any conclusions Dr. Galaznik may have reached had he been retained and fully reviewed the file.

> Undoubtedly, had the trial court concluded that EN's injuries were accidental, defendant could not have been convicted of either first-degree or second-degree child abuse, which respectively require a showing that the injuries were caused either intentionally or recklessly. MCL 750.136b(2); MCL 750.136b(3). However, defendant has not established that this conclusion was reasonably probable, and thus, failed to establish that any error prejudiced him. Given defendant's multiple admissions to law enforcement that he had struck EN on several occasions, including admissions that he slapped and struck her "too hard," and that this may have caused her fractured skull and fractured ribs, the trial court had substantial nonmedical evidence to support defendant's conviction. Accordingly, defendant cannot establish that, but for counsel's errors, the result of the proceeding would have been different. *Scott,* 275 Mich. App. 526.

*Nesto*, 2019 WL 3852786, at *5.

With respect to the provision of experts to indigent defendants, the Supreme Court has held that the Fourteenth Amendment's Due Process Clause obligates states to provide indigent defendants with psychiatric examinations and assistance in capital cases when the defendant has made a preliminary showing that his or her sanity at the time of the offense is likely to be a

significant factor. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). "The Supreme Court has left open how *Ake* should extend to experts other than psychiatrists . . ., and the Court's subsequent decisions have not created a 'clear or consistent path for courts to follow' when answering this due-process question." *Bergman v. Howard*, --- F.4th ----, 2022 WL 17576358, at *5 (6th Cir. Dec. 12, 2022) (internal citation omitted).

In *Bergman*, the Sixth Circuit noted that "[u]ntil the [Supreme] Court provides more specific guidance on this topic, then, the law will remain 'unclear' and state courts will have 'broad discretion' to determine the circumstances when defendants have a right to state-funded non-psychiatric experts." *Id.* at *6. The Sixth Circuit further explained:

> Caselaw confirms this uncertainty. *See Carey v. Musladin*, 549 U.S. 70, 76, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). We have previously noted that circuit courts "have not reached consensus" on whether "the right recognized in [*Ake*]—to a psychiatrist's assistance in support of an insanity defense—extends to non-psychiatric experts as well." *Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010). Some courts have suggested, at least prior to *Medina*, that *Ake*'s rules apply in the same way to other experts. *See Little v. Armontrout*, 835 F.2d 1240, 1243–44 (8th Cir. 1987) (en banc). Yet other courts have held that defendants must satisfy additional requirements, such as the requirement to demonstrate that the expert evidence is "both critical to the conviction and subject to varying expert opinion." *United States v. Snarr*, 704 F.3d 368, 405 (5th Cir. 2013) (citation omitted). We have ourselves sent mixed messages on this issue. *Babick*, 620 F.3d at 579 (citing cases). Perhaps for this reason, we have repeatedly denied certificates of appealability for claims like Bergman's on the ground that the Supreme Court has not clearly established when a defendant has a right "to a state-paid expert witness other than for a psychiatrist's assistance in support of an insanity defense." *DeJonge v. Burton*, 2020 WL 2533574, at *5 (6th Cir. Apr. 20, 2020) (order); *Bullard v. Jackson*, 2018 WL 4735626, at *4 (6th Cir. Sept. 19, 2018) (order); *Davis v. Maclaren*, 2018 WL 4710071, at *3 (6th Cir. Apr. 3, 2018) (order); *McGowan v. Winn*, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) (order).

*Bergman*, 2022 WL 17576358, at *6. Thus, the due process claim raised by Petitioner regarding the denial of funds for a non-psychiatric expert in a post-conviction hearing cannot support habeas relief because the right he asserts has not been clearly established by the Supreme Court.

Furthermore, the state courts did not unreasonably determine the facts regarding Petitioner's claim. As discussed *supra*, counsel was not ineffective for choosing a "blame the mother" strategy for Petitioner's defense. While counsel could have pursued a defense focusing on accidental injury and presented an expert at trial to testify to such, the fact that an expert could testify that the injuries sustained by Petitioner's daughter could have been caused by an accidental fall would not negate the testimony provided by Dr. Lishawa for the prosecution, nor would it negate Petitioner's admissions to the police that he had struck his daughter a few times. Given that evidence, the trial court reasonably determined that funding an expert was unnecessary because counsel's strategy was still reasonable even if an expert had testified that the injuries were caused by an accident.

In sum, Petitioner's claim of error during post-conviction proceedings is outside the scope of federal habeas review. Moreover, Petitioner has not demonstrated that the trial court's denial of funds for an expert to testify at his *Ginther* hearing was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground III.

### C.    Ground IV—Sentencing Errors

As his last ground for relief, Petitioner contends that his Fourteenth Amendment due process and equal protection rights were violated when the trial court improperly scored Offense Variables (OV) 3 and 10. (ECF No. 1, PageID.16.) Petitioner contends that OV 3 should have been scored at 10 points, not 25 points, because there was no evidence presented at trial that his daughter's life was ever threatened. (*Id.*) Petitioner argues further that OV 10 should have been scored at 10 points, not 15 points, because there was no evidence presented that he exploited the victim in any way. (*Id.*)

The court of appeals rejected Petitioner's claim, stating:

20

Defendant argues that the trial court erred in assessing 25 points under OV 3 because EN did not suffer life-threatening or permanently incapacitating injuries, and that OV 3 should instead have been scored at 10 points for bodily injury requiring medical treatment. We disagree.

Offense variable 3 addresses physical injury to the victim. MCL 777.33(1); *People v. Laidler*, 491 Mich. 339, 343, 817 N.W.2d 517 (2012). MCL 777.33(1)(c) directs trial courts to assess 25 points under OV 3 if, during the offense, a "life threatening or permanent incapacitating injury occurred to a victim." However, 10 points are assessed under OV 3 when bodily injury requiring medical treatment occurred to the victim. MCL 777.33(1)(d). For the purpose of OV 3, a "victim" is any person harmed by the criminal actions of the defendant. *Laidler*, 491 Mich. at 349 n.6, 817 N.W.2d 517. The relevant inquiry is whether the victim's injury was life threatening, rather than whether a defendant's action was life threatening. *People v. Rosa*, 322 Mich. App. 726, 746, 913 N.W.2d 392 (2018).

This Court has recognized the ordinary meaning of "life-threatening" as "capable of causing death: potentially fatal." *People v. Chaney*, --- Mich. App. ----, ----; --- N.W.2d ---- (2019) (Docket No. 341723); slip op. at 2. Therefore, the relevant inquiry is whether the injuries were potentially fatal. *Id.* at 3. However, in assessing whether an injury is "life threat[en]ing," this Court's review must also take into account "the effect of medical treatment." *Id.* at ---- n. 4; slip op. at 3.

In this case, Dr. Lishawa testified at trial that upon initially examining the child, he "determined quite quickly that [EN] was not in life threatening danger from the injuries she'd received," and therefore concluded that she could be treated properly at that facility. This statement appears to have been the doctor's initial impression arrived at in the very beginning of his assessment of the child for purposes of determining whether the child could be given adequate care at that facility, and not a final conclusion of the extent of her injuries. Dr. Lishawa thereafter testified that his impressions regarding this case evolved after the initial assessment, for example, the child's skull fracture was not detected during the first examination. He further testified that the amount of bone damage the 2-month-old child had sustained required a large amount of force. The child was thereafter treated at the hospital for three days before being released. Viewing the doctor's testimony in its entirety supports the conclusion that the statement that the child's injuries were not life-threatening was an initial assessment only. We further observe that, even if wrongly scored, a rescoring of OV 3 would not affect defendant's sentencing in light of our assessment of the scoring of OV 10.

* * *

Defendant argues that OV 10 should have been assessed 0 points because defendant's crime did not involve the exploitation of a vulnerable victim. We disagree.

The statute defines "Vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). "'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). More specifically, MCL 777.40(1)(b) directs the trial court to assess 10 points under OV 10 if it has found that defendant "exploited a victim's physical disability, mental disability, *youth* or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b) (emphasis added). In child-abuse cases, the victim's youthfulness should be considered for the purpose of assessing OV 10. See *People v. McFarlane*, 325 Mich. App. 507, 536, 926 N.W.2d 339, 357 (2018).

Defendant argues that he did not manipulate EN for a selfish or unethical purpose and the trial court erred in declining to examine whether defendant was motivated by selfish or unethical purposes. However, Dr. Lishawa's testimony created an inference that defendant violently struck or threw EN when she was just two months of age. Subsequently, defendant selfishly refused to seek medical attention for EN for fear of being sent to jail. The trial court may rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v. Earl*, 297 Mich. App. 104, 822 N.W.2d 271, 109110; 297 Mich.App. 104, 822 N.W.2d 271 (2012). That evidence supported a score of 10 points under OV 10. Accordingly, the trial court did not err in assessing defendant 10 points under OV 10.

* * *

The trial court calculated defendant's total OV score to be 35 and PRV score to be 67, which placed him in cell II/E of the sentencing grid, with a minimum sentence range of 108[–]360 months for his conviction of first-degree child abuse given his fourth habitual offender status. See MCL 777.62; see also 777.21(3)(c). Even if 15 points were subtracted from OV 3, the new score would remain in cell II/E, and the same minimum sentence range would apply. MCL 777.62. The trial court sentenced defendant to serve a minimum sentence of 360 months in prison, which was within the range provided under cell II/E. Because defendant's sentencing guidelines range does not change, resentencing is not required. See *People v. Francisco*, 474 Mich. 82, 89 n. 8, 711 N.W.2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

Further, given that defendant's minimum sentence is within the appropriate guidelines range, this Court must affirm defendant's sentence and may not remand for resentencing. MCL 769.34(10).

*Nesto*, 2019 WL 3852786, at *6–7.

Claims concerning the improper application of sentencing guidelines are state law claims

and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370,

373–74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (concluding that alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner, however, appears to suggest that the trial court's scoring of OV 3 and OV 10 was based on false information and, therefore, that the resulting sentence violated his due process rights. As discussed below, Petitioner's claim is meritless.

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. Rather, Petitioner appears to suggest that there was insufficient evidence presented to support the facts relied upon by the court at sentencing. However, whether or not the victim's injury was life-threatening, for purposes of OV, and whether or not Petitioner's crime involved the exploitation of a vulnerable victim, are purely matters of state law. The trial court's determinations—as affirmed by the court of appeals—that the victim's injuries were life-threatening and that Petitioner did exploit a vulnerable victim conclusively resolve the issues; they are axiomatically correct because the decision of the state courts on a state

law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, any suggestion that the evidence supporting these offense variables was insufficient is also purely a matter of state law. The Sixth Circuit has described the scope of constitutional protection at sentencing with regard to the burden of proof as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process. *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 156 (1997). *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was

not an attempt to establish the bottom limit of constitutional propriety; it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct. Even if the State of Michigan requires that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the federal Constitution. Thus, any sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on federal habeas review. This same analysis applies to Petitioner's challenges to the scoring of OV 3 and OV 10.

In any event, even if the guidelines were improperly scored as Petitioner argues, he would not be entitled to habeas relief because the error was harmless. The impact of an error on the outcome of the proceedings is the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 142 S. Ct. 1510, 1519 (2022) (stating "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial"). The court of appeals' determination that Petitioner's guidelines range would not change even if 15 points were subtracted from OV 3, a decision to which this Court must defer,[4] is the equivalent of a determination that any error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995).

---

[4] *Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." *Brown*, 142 S. Ct. at 1520. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id*. at 1525. This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

Petitioner has failed to show that the court of appeals' rejection of his sentencing claims is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:     <u>January 3, 2023</u>                    <u>    /s/ Jane M. Beckering               </u>
                                                                    Jane M. Beckering
                                                                    United States District Judge